1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DANIELLE MARIE SOLANO, | ) | Case No.: 1:19-cv-1351 JLT |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S APPEAL |
| | ) | (DOC. 15) AND REMANDING THE ACTION |
| v. | ) | PURSUANT TO SENTENCE FOUR OF 42 |
| | ) | U.S.C. § 405(g) |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | ORDER DIRECTING ENTRY OF JUDGMENT |
| | ) | IN FAVOR OF DANIELLE MARIE SOLANO, |
| Defendant. | ) | AND AGAINST DEFENDANT ANDREW |
| | ) | SAUL, THE COMMISSIONER OF SOCIAL |
| | ) | SECURITY |

Danielle Marie Solano asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and rejecting limitations identified by physicians. For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In October 2011, Plaintiff filed an application for benefits, asserting disability due to high blood pressure, bi-polar disorder, migraines, and degenerative disc disease in her back. (*See* Doc. 10-5 at 2; Doc. 10-8 at 2) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 10-5) Plaintiff requested an administrative hearing and testified before an ALJ on May 22, 2014. (*See* Doc. 10-4 at 37) The ALJ found Plaintiff was not disabled and issued an order denying benefits on October 6, 2014. (Doc. 10-5 at 59-70)

1

Plaintiff requested review by the Appeals Council, which granted the request on May 13, 2016. (Doc. 10-5 at 77)  The Appeals Council directed the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations."  (*Id.* at 78)  In addition, the Appeals Council indicated Plaintiff would have the opportunity for a new hearing and instructed the ALJ to "[o]btain supplemental evidence from a vocational exert to clarify the effected of the assessed limitations on the claimant's occupational base."  (*Id.* at 78-79)  Thus, the Appeals Council vacated the decision and remanded the matter for further proceedings.  (*Id.* at 77)

Plaintiff testified at a second hearing before the ALJ on November 7, 2017.  (Doc. 10-3 at 64)  The ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act and issued an order denying benefits on July 30, 2018.  (*Id.* at 64-78)  The Appeals Council denied Plaintiff's request for review on July 22, 2019.  (*Id.* at 2-5)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g).  The ALJ's determination that a claimant is not disabled must be upheld if the proper legal standards were applied and substantial evidence supports the findings. *Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938).  The entire record must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment

that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to the five-step process, the ALJ first determined Plaintiff had not engaged in substantial gainful activity since the application date of October 28, 2011.  (Doc. 11-3 at 66)  Second, the ALJ found Plaintiff's severe impairments included: "spinal disorder, leg tremors of unknown etiology, migraines, left ischial bursa, disorder of the left upper extremity, respiratory disorder, affective disorder, and anxiety disorder."  (*Id.* at 66)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id.* at 67-68)  Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and carry 20 pounds occasionally and 10 pounds frequently, and push and pull within those weight limits. She cannot climb ladder[s], ropes, or scaffolds and she cannot perform a job that requires balance. She can rarely kneel or crawl, and she can occasionally climb stairs, crouch, and stoop; stand and walk for six hours and sit for six hours in an eight-hour workday; and she

needs the ability to request 15 minutes every two hours falling within the normal breaks and lunches. She can occasionally reach overhead with the bilateral upper extremities, frequently handle, finger, and feel with the bilateral upper extremities, and she should avoid concentrated exposure to respiratory irritants, including fumes, gases and chemicals. She cannot work around hazards, such as unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles. She should not be exposed to temperature extremes of cold or hot. Mentally, she can perform noncomplex routine tasks in a static environment, she can have occasional contact with the public, and she can perform occasional tasks that require teamwork.

(*Id.* at 68)  At step four, the ALJ noted Plaintiff did not have past relevant work.  (*Id.* at 77)  The ALJ determined at step five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" with this residual functional capacity.  (*Id.*)  Thus, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 78)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ had a duty to develop the record and obtain functional assessments from a treating or examining source.  (Doc. 19 at 9)  In addition, Plaintiff asserts the ALJ erred "by rejecting the more restrictive opinions from non-examining sources without comment."  (*Id.*, emphasis omitted)  Finally, Plaintiff contends the ALJ failed to properly consider his subjective statements and incorporate limitations consistent with his testimony in the residual functional capacity.  (*Id.* at 13-15)  The Commissioner argues that "[t]he ALJ gave good reasons supported by substantial evidence, a deferential standard of review, for finding Plaintiff not disabled."  (Doc. 20 at 7)

### A.    Evaluation of the Medical Evidence

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester*, 81 F.3d at 830.  In general, the opinion of a treating physician is afforded the greatest weight.  *Id.*; *see* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  An examining physician's opinion is given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An opinion is not binding upon the ALJ and may be discounted whether another physician contradicts it.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical physician only by identifying a "clear and convincing" reason.  *Lester*,

4

81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830.  When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in rejecting limitations identified by two consultative examiners, Drs. Izzi and Fabella.  (Doc. 15 at 14-18)  Because the opinions were contradicted by state agency medical consultants and another consultative examiner (*see* Doc. 10-3 at 75-76), the ALJ was required to identify specific and legitimate reasons for rejecting the opinions of Dr. Izzi and Fabella.  *See Lester*, 81 F.3d at 831.

### 1.    Examination and findings of Dr. Izzi

Dr. Roger Izzi performed a psychiatric evaluation on March 18, 2012.  (Doc. 10-11)  Plaintiff's "chief complaint" was neck pain.  (*Id.* at 63)  Plaintiff stated she was living in a group home and saw "family and friends on a regular basis."  (*Id.*)  She reported she had "occasional unprovoked crying spells" and restless sleep.  (*Id.*) Plaintiff reported a history of psychiatric hospitalization at ages 10 and 13, and Dr. Izzi noted Plaintiff was "presently being treated by mental health professionals."  (*Id.* at 64, 65)

Dr. Izzi observed that Plaintiff had an "alert and responsive" level of consciousness, and Plaintiff was "fully oriented."  (Doc. 10-11 at 64)  He found Plaintiff "was able to immediately recall three words without any obvious difficulty" and after a delay, "was able to recall one of three words." (*Id.* at 65)  Plaintiff "had no difficulty recalling five digits forward or three digits backwards" and "calculating 8 times 7."  (*Id.*)  Dr. Izzi noted Plaintiff also "had no difficulty spelling the word 'world' forward or backwards."  (*Id.*)  He determined Plaintiff's "overall performance on the Folstein Mini Mental State Examination was within the normal range," and the "examination suggest[ed] that cognitive functioning remains intact."  (*Id.*)  Dr. Izzi diagnosed Plaintiff with "Bipolar Disorder, NOS"

5

1   and "Posttraumatic Stress Disorder, NOS."  (*Id.* at 66)  Dr. Izzi opined:

2        [T]he claimant does appear capable of performing a simple and repetitive type task on
         a consistent basis over an eight-hour period.  Her ability to get along with peers or be
3        supervised in a work-light setting would be moderately limited by her mood disorder.
         The claimant's mood disorder can be expected to fluctuate.  Any significant
4        fluctuation of mood would limit the claimant's ability to perform a complex task on a
         consistent basis over an eight-hour period.  On a purely psychological basis, the
5        claimant appears capable of responding to usual work session situations regarding
         attendance and safety issues.  On a purely psychological basis, the claimant appears
6        capable of dealing with changes in a routine work setting.

7   (Doc. 10-11 at 66)

8                a.      The ALJs evaluation of the opinion

9        Addressing the medical evidence, the ALJ indicated the opinion of Dr. Izzi was given

10  "significant weight as consistent with the overall record."  (Doc. 10-3 at 75)  The ALJ found the report

11  supported "a restriction on public contact and tasks that involvement teamwork."  (*Id.*)  The ALJ noted

12  Plaintiff "does have friends, and they help her with tasks around her home, so it appears that a

13  restriction to occasional public contact would be appropriate."  (*Id.*)  In the residual functional capacity,

14  the ALJ restricted Plaintiff to "noncomplex routine tasks in a static environment."  (*Id.* at 68) The ALJ

15  also indicated Plaintiff could "have occasional contact with the public" and "perform occasional tasks

16  that require teamwork."  (*Id.*)

17       Plaintiff contends the ALJ erred because she "failed to explain why she rejected Dr. Izzi's more

18  restrictive opinion that Plaintiff is limited in her ability to get [along] with peers or be supervised."

19  (Doc. 15 at 15)  According to Plaintiff, "the ALJ failed to adopt or explain how Plaintiff's ability to

20  interact with just two people on any regular basis contradicts Dr. Izzi's opinion."  (*Id.* at 16)  Plaintiff

21  maintains the treatment record and Dr. Izzi's examination findings support the "limited ability to

22  interact with peers (irrespective of whether teamwork was required), or be supervised in a work like

23  setting."  (*Id.*)

24       The Commissioner argues that in formulating the RFC, "The ALJ reasonably interpreted and

25  resolved all the opinions and evidence regarding Plaintiff's ability to interact with others to find that

26  Plaintiff could have up to occasional contact with the public and perform occasional tasks requiring

27  teamwork."  (Doc. 16 at 22)  The Commissioner asserts "moderate limitation in the area of interacting

28  with others – as opined by Dr. Izzi – is consistent with finding that Plaintiff could still function in that

area at least occasionally."  (*Id.*, citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1106-08 (9th Cir. 2018).

Further, the Commissioner notes that "all of the representative jobs that the ALJ found Plaintiff could

perform require 'not significant' interaction with people."  (*Id.* at 23, citing DOT 239.567-010,

323.687-014, 726.687-010)

### b.  Incorporation of moderate limitations in the RFC

Significantly, Dr. Izzi did not opine Plaintiff was completely precluded from interaction with

the public, peers, or supervisors.[1]  Rather, Dr. Izzi opined Plaintiff's "ability to get along with peers or

be supervised in a work-light setting would be *moderately* limited by her mood disorder."  (Doc. 10-11

at 66, emphasis added)  The ALJ adopted this limitation in evaluating the severity of Plaintiff's mental

impairments and found Plaintiff had "*moderate* restriction in … interacting with others."  (Doc. 10-3 at

68, emphasis added)  Thus, it is clear the ALJ accepted the level of limitation identified by Dr. Izzi in

evaluating Plaintiff's mental impairments.

An RFC assessment may sufficiently account for limitations identified by without using the

same language as the physician. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)

(explaining the ALJ translated moderate mental limitations identified by a physician into "concrete

restrictions" for the RFC.  For example, the Ninth Circuit determined an ALJ accounted for "moderate

difficulties in social functioning" with a limitation to work "with no more than occasional public

interaction."  *Hughes v. Colvin*, 599 Fed. App'x 765, 766 (9th Cir. 2015); *see also Christopher G. v.

Saul*, 2020 WL 2079972 at *6 (C.D. Cal. Apr. 30, 2020) ("an RFC for independent work with no more

than occasional interaction adequately accommodates a physician's opinion that the claimant is

moderately limited in social functioning").  Similarly, a limitation to "occasional" interaction with

coworkers in the RFC addressed a physician's opinion that the claimant had moderate limitations with

interacting with peers and coworkers.  *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2018).  Thus,

the limitations identified by the ALJ in the RFC—including "occasional contact with the public," and

"occasional tasks that require teamwork"— address Plaintiff's moderate limitations with social

functioning identified by the ALJ, and the moderate limitations identified by Dr. Izzi  *See Hughes*, 599

---

[1] In fact, Dr. Izzi did not offer an opinion related to Plaintiff's ability to interact with the public. (*See* Doc. 10-11 at 66)

7

1  Fed. App'x at 766; *Shaibi*, 883 F.3d at 1107.

2      2.      Examination and findings of Dr. Fabella

3      Dr. Emmanuel Fabella performed a consultative internal medicine consultation on March 13,

4  2012. (Doc. 10-11 at 53)  Dr. Fabella noted Plaintiff presented "with the main complaint of neck and

5  upper back pain." (*Id.*)  Plaintiff described the pain "as sharp, nonradiating, moderate, frequent, and

6  associated with numbness" in the left hand. (*Id.*)  Plaintiff said her pain was "worsened by activities

7  such as lifting a heavy grocery bag, going up two flights of stairs, and repetitive bending." (*Id.*)  In

8  addition, Plaintiff stated "her hands [were] getting clumsy." (*Id.*)

9      Dr. Fabella noted Plaintiff had an MRI of the cervical spine that "showed diffuse multilevel

10  degenerative disease and spondylotic changes throughout the cervical spine with the most significantly

11  affected levels being C5-C6 and C6-C7, where there [was] evidence of left foraminal narrowing as

12  well." (Doc. 10-11 at 53) Dr. Fabella also noted there were "incidental notes of disc bulges and small

13  disc protrusion at the T1-52 and T2-T3 levels." (*Id.*)

14      Upon examination, Dr. Fabella found Plaintiff had a grip strength of "35 pounds of force using

15  the right hand, and 40 pounds of force using the left hand." (Doc. 10-11 at 55)  He observed that

16  Plaintiff "moved about briskly in the examining room" and had "a normal gait and balance." (*Id.*)  In

17  addition, Dr. Fabella noted Plaintiff "was able to stand on her toes and had mild difficulty standing on

18  her heels, but was able to do a full squat and get back up without difficulty." (*Id.*)  Dr. Fabella found

19  "no spinal or paraspinal tenderness" and Plaintiff exhibited "good range of motion with forward

20  flexion of 90 degrees" in her back. (*Id.* at 56)  In addition, Plaintiff had a negative straight leg raising

21  test. (*Id.*)  Dr. Fabella found Plaintiff had "no laxity of any joint" and "no joint deformities, effusions,

22  warmth, swelling, crepitus or pain on motion" in any extremities. (*Id.*)  He also determined Plaintiff's

23  range of motion was "grossly within normal limits" in her shoulders, elbows, wrists, ands, hips, knees,

24  and ankles. (*Id.*)  Dr. Fabella noted Plaintiff's motor strength was "5/5 over all four extremities." (*Id.*)

25  Plaintiff exhibited "50% hypoesthesia" over the fourth and fifth fingers on her left hand. (*Id.* at 57)

26      Dr. Fabella diagnosed Plaintiff with "[c]ervicalgia and mid back pain secondary to multilevel

27  degenerative disc disease and osteoarthritis with bi-level neuroforaminal stenosis on the left side at

28  C5C6 and C6-C7. (Doc. 10-11 at 57)  He stated it was also possible that Plaintiff had "co-existing left

ulnar neuropathy," based upon "the sensation of numbness" in Plaintiff's hand. (*Id.*) Dr. Fabella opined Plaintiff was "able to lift and carry 10 pounds occasionally and less than 10 pounds frequently, limited due to cervicalgia and back pain." (*Id.*) In addition, Dr. Fabella opined Plaintiff was "able to balance, knee, and crawl only occasionally secondary to neck and back pain." (*Id.*) He found Plaintiff had no restrictions with sitting, standing, or walking durations; but Plaintiff was able to walk on uneven terrain occasionally. (*Id.*)

### a.      The ALJs evaluation of the opinion

The ALJ summarized the findings of Dr. Fabella and indicated she gave "significant weight" to the opinion and report. (Doc. 10-3 at 74) However, the ALJ also indicated: "I find the restriction on lifting and carry[ing] only 10 pounds is not reasonable in light of the overall findings, as well as the findings in this report. The claimant had full motor strength and her grip strength was far beyond 10 pounds." (*Id.*)

Plaintiff contends the ALJ erred in rejecting the lifting and carrying limitations identified by Dr. Fabella because the "vague reference to 'the overall findings' is not sufficiently specific to support the rejection of an examining physician's opinion." (Doc. 15 at 17) In addition, Plaintiff asserts the reference to motor strength and grip strength was "not a legitimate reason for rejecting Dr. Fabella's opinion, because he did not base his opined limitations upon any reduced strength," but instead were based upon Plaintiff's "cervicalgia and back pain." (*Id.* at 17-18)

The Commissioner argues that "the ALJ's reasons for rejecting Dr. Fabella's weight-lifting and carrying restrictions were specific and legitimate." (Doc. 16 at 17) According to the Commissioner, "Plaintiff's argument that the findings related to motor strength and grip strength are unrelated to Dr. Fabella's opinion that Plaintiff was limited to lifting 10 pounds … are nonsensical given that strength naturally seems related to lifting capacity." (*Id.*) Further, the Commissioner asserts that the ALJ "properly gave more weight to the opinion of Dr. Siekerkotte, who examined Plaintiff more recently in September 2016, compared to when Dr. Fabella examined Plaintiff in 2012, and whose opinion was more consistent with the overall record, including the opinions of State agency reviewing physicians Drs. Kiger and Ocrant. (*Id.*)

### b.      Inconsistency with Dr. Fabella's own findings

Internal inconsistencies within a report support the decision to discount the opinion of a physician. *See Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 603 (9th Cir. 1999); *see also Khounesavatdy v. Astrue,* 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) (an ALJ may consider "the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion").

As noted above, the ALJ indicated she rejected the lifting and carrying limitation identified by Dr. Fabella, in part, due to his findings that Plaintiff "had full motor strength and her grip strength was far beyond 10 pounds."  (Doc. 10-3 at 74)  However, the ALJ failed to explain how Plaintiff's motor strength and grip strength are inconsistent with the lifting and carrying restrictions, which Dr. Fabella indicated were not based upon the strength testing, but instead "due to cervicalgia and back pain." (Doc. 10-11 at 57)

Courts have determined an ALJ errs in rejecting lifting and carrying restrictions on the basis of motor strength testing, because "having normal motor strength in one's arms and legs does not necessarily indicate the ability to lift."  *See Holmes v. Colvin*, 2016 WL 6943775 at*3 (W.D. Wash. Nov. 28, 2016); *see also Velasquez v. Astrue*, 2008 WL 791950 at *3, n.3 (D. Colo. Mar. 20, 2008) (noting motor strength was not muscle strength, and "it is not apparent in what way the facility for 'motor strength'… correlates with lifting and manipulative capacity, if it does at all").

Furthermore, courts have rejected a relationship between a claimant's grip strength and the claimant's ability to lift and carry.  *See, e.g., Costa v. Berryhill*, 2018 WL 2021374 at *10 (C.D. Cal. Apr. 26, 2018); *Flynn v. Berryhill*, 2018 WL 379012 at *4 (D. Haw. Jan. 1, 2018) ("[g]rip strength is not synonymous with lifting ability"); *Bauslaugh v. Astrue*, 2010 WL 1875800, at *5 (C.D. Cal. May 11, 2010) ("under the Regulations, the ability to grip and grasp is not related to the ability to lift and carry).  "Grip strength measures the force grip of a hand and represents the power of squeezing between the thumb and fingers."  *Hope v. Astrue*, 2011 WL 2135054 at *1 (C.D. Cal. May 30, 2011). On the other hand, "[l]ifting involves picking up a load with the legs, arms, and torso."  *Id.*  Because gripping is a non-exertional activity that is not related to lifting and carrying, the Court finds the ALJ erred in rejecting the lifting and carrying limitations identified by Dr. Fabella based upon Plaintiff's grip strength testing.  *See Costa*, 2018 WL 2021374 at *10; *Flynn*, 2018 WL 379012 at *4.

Because the ALJ has not explained why she believed the lifting and carrying restrictions from

Dr. Fabella were inconsistent with his findings regarding Plaintiff's motor strength and grip strength— or how the objective findings correlate to ability to lift and carry— this factor does not support her decision to reject the limitations.

c.      Inconsistency with the "overall findings"

An ALJ may reject the opinions of a physician where the opinions are inconsistent with the overall record. *Morgan*, 169 F.3d at 602-03; *see also Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003) (an ALJ may reject an opinion when it is "unsupported by the record as a whole"). However, to reject an opinion as inconsistent with the overall record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). To reject an opinion as contradicted by the medical record, the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); *see also Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.")

The ALJ failed to meet this burden, as she did not identify and discuss specific conflicting opinions—such as those from Drs. Siekerkotte, Kiger, and Ocrant—or other conflicting medical evidence. Rather, the ALJ offered only a conclusion that the lifting and carrying limitation identified by Dr. Fabella was "not reasonable in light of the overall findings." (*See* Doc. 10-3 at 74) This is insufficient to "achieve the level of specificity... required" by the Ninth Circuit. *See Embrey*, 849 F.2d at 421-22; *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (noting courts will not "comb the administrative record to find specific conflicts"). Because the ALJ did not identify specific evidence in the record that conflicted with the lifting and carrying limitations identified by Dr. Fabella, the purported conflict with the overall record is not a specific, legitimate reason to reject the opinion. *See Reddick*, 157 F.3d at 725.

### 3.    Conclusion

The ALJ failed to carry the burden to identify specific and legitimate reasons, supported by the record, to reject the limitations identified by Dr. Fabella. Consequently, the ALJ erred in evaluating the medical record and rejecting the physical limitations identified by Plaintiff's treating physician.

**B.      Remand is Appropriate**

      The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

      The ALJ failed to identify legally sufficient reasons for rejecting physical limitations identified by Dr. Fabella.  Because the ALJ failed to reject the opinion of Dr. Fabella on proper grounds and there is conflicting evidence in the record—including the opinion of another examining physician— the error is not "inconsequential to the ultimate nondisability determination." *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence to determine Plaintiff's physical residual functional capacity. *See Moisa*, 367 F.3d at 886.

## CONCLUSION AND ORDER

      For the reasons set for above, the Court finds the ALJ erred in evaluating the medical record related to Plaintiff's physical impairments, and the administrative decision cannot be upheld.  *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1.      Plaintiff's appeal of the administrative decision denying benefits (Doc. 15) is **GRANTED**;

2.      The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3.     The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Danielle Marie Solano, and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __March 1, 2021__            __/s/ Jennifer L. Thurston__
                                         UNITED STATES MAGISTRATE JUDGE